UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Case No. 1:23-cv-8246 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| THORNE HEALTHTECH, INC., PAUL | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| JACOBSON, THOMAS MCKENNA, | : **THE SECURITIES EXCHANGE ACT** |
| SARAH KAUSS, RICCARDO BRAGLIA, | : **OF 1934** |
| TOSHITAKA INUZUKA, TAKESHI | : |
| MINAKATA, SALONI VARMA, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

------------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Thorne HealthTech, Inc. ("Thorne HealthTech or the "Company") and the members Thorne HealthTech board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Thorne HealthTech by affiliates of *L* Catterton Management Limited ("*L* Catterton").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on September 14, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Healthspan Merger Sub, Inc. ("Merger Sub") will commence a tender offer to purchase all of the outstanding shares of Company common stock (the "Tender Offer") and following the Tender Offer, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation and as a wholly owned subsidiary of Healthspan Buyer, LLC ("Parent") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 27, 2023 (the "Merger Agreement"), each Thorne HealthTech common share issued and outstanding will be converted into the right to receive $10.20 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Thorne HealthTech's outstanding common stock and will expire on October 12, 2023 (the "Tender Offer"). Parent and Merger Sub are both affiliates of *L* Catterton.

3. Defendants have now asked Thorne HealthTech's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Thorne HealthTech's financial projections relied upon by the Company's financial advisor, Canaccord Genuity LLC ("Canaccord Genuity"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Canaccord Genuity. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Thorne HealthTech stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Thorne HealthTech's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDITHORNE HEALTHTECHON AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Thorne HealthTech common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Paul Jacobson has served as a member of the Board since 2010 and is the Company's co-founder and Chief Executive Officer and the Chairman of the Board.

3

11. Individual Defendant Thomas McKenna has served as a member of the Board since 2010.

12. Individual Defendant Sarah Kauss has served as a member of the Board since 2021.

13. Individual Defendant Riccardo Braglia has served as a member of the Board since 2012.

14. Individual Defendant Toshitaka Inuzuka has served as a member of the Board since 2018.

15. Individual Defendant Takeshi Minakata has served as a member of the Board since 2022.

16. Individual Defendant Saloni Varma has served as a member of the Board since 2021.

17. Defendant Thorne HealthTech is a company organized under the laws of Delaware and maintains its principal offices at 152 West 57th Street, New York, NY 10019. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "THRN."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

20. Thorne HealthTech, a science-driven wellness company, provides solutions and personalized approaches to health and wellness in the United States and internationally. It offers various health tests, such as sleep, stress, weight management, gut health, heavy metals, biological age, and other health tests that generate molecular portraits for its customers, as well as develops

4

nutritional supplements and offers wellness education solutions. The Company uses the Onegevity platform to map, integrate, and understand the biological features that describe the state of an individual's health, as well as provide actionable insights and personalized data, products, and services that help individuals to take a proactive approach to enhance and maintain their health. It primarily serves healthcare professionals, professional athletes, and professional sports and Olympic teams. Thorne HealthTech was founded in 1984 and is headquartered in New York, New York.

21. On August 28, 2023, the Company announced the Proposed Transaction:

> NEW YORK, Aug. 28, 2023 /PRNewswire/ -- Thorne HealthTech, Inc. ("Thorne" or the "Company") (NASDAQ: THRN), a leader in delivering innovative solutions for a personalized approach to health and wellness, announced today that it has entered into a definitive agreement under which *L* Catterton, a leading global consumer-focused investment firm, will commence a tender offer to acquire all outstanding shares of common stock of Thorne for $10.20 per share in cash. The transaction value of approximately $680 million represents a 94% premium to the unaffected closing share price on July 20, 2023, and a 113% premium to the 30-day volume weighted average price as of the unaffected date of July 20, 2023. Thorne's independent Special Committee and Board of Directors have each unanimously approved the agreement and recommend that all stockholders tender their shares in the tender offer.
>
> "We are very pleased to have reached an agreement with *L* Catterton, which offers immediate liquidity at a significant premium to our stockholders," said Sarah Kauss, a member of Thorne's Board of Directors and Chair of the Special Committee of Thorne's Board of Directors. "The transaction is the result of a thorough process overseen and directed by an independent Special Committee of the Board of Directors and is a wonderful outcome for Thorne and its stockholders. The transaction is possible due to the hard work and dedication of Thorne's world-class team and, on behalf of the Special Committee and the whole Board of Directors, I'd like to thank the entire management team for everything they've done to build Thorne into a leading science-driven wellness company that empowers consumers with the support, education, and solutions they need to live a healthier life."

"This transaction is an excellent outcome for all of our stakeholders and marks the beginning of an exciting new chapter for Thorne," said Paul Jacobson, Chairman and Chief Executive Officer of Thorne. "For over a decade, we have worked tirelessly to deliver on our mission to bring science-based solutions to the prevention space and empower consumers to live healthier lives longer. *L* Catterton has an impressive track record of fostering the growth and success of leading global consumer brands. Together with their deep expertise in the health and wellness industry, global reach, and extensive operational capabilities, I am confident *L* Catterton is the right partner to fuel Thorne's long-term growth."

"We have admired Thorne for many years given its uncompromising approach to science and innovation as well as its commitment to transforming consumers' lives and approach to health and wellness," said Marc Magliacano, a Managing Partner in *L* Catterton's Flagship Fund. "As one of the pioneers of the wellness movement, Thorne continues to lead by example and is on the precipice of breakthrough products and technologies that will allow consumers to significantly extend their healthspans through personalized wellness programs developed by Thorne's proprietary dataset and protocols."

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by Thorne's independent Special Committee and Board of Directors, *L* Catterton will commence a tender offer to acquire all of Thorne's outstanding shares of common stock for $10.20 per share in cash. The transaction is expected to be completed in the fourth quarter of 2023, subject to customary closing conditions, including satisfaction of the minimum tender condition and receipt of regulatory approvals. Subject to the terms and conditions of the agreement, following the completion of the tender offer, *L* Catterton will acquire any shares of Thorne that are not tendered in the tender offer through a second-step merger for $10.20 per share in cash. Upon completion of the transaction, Thorne will become a privately held company and its shares of common stock will no longer be listed on any public market.

**Advisors**

> CG Sawaya Partners (operating under Canaccord Genuity) served as exclusive financial advisor and Wilson Sonsini Goodrich & Rosati served as legal advisor to Thorne and the Special Committee of the Board of Directors. BofA Securities served as financial advisor and Kirkland & Ellis LLP served as legal advisor to *L* Catterton.

* * *

22. It is therefore imperative that Thorne HealthTech's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

23. On September 14, 2023, Thorne HealthTech filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Solicitation Statement fails to provide material information concerning financial projections by Thorne HealthTech management and relied upon by Canaccord Genuity in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-

public financial forecasts (the "Company Projections") and provided them to the Board and Canaccord Genuity with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Thorne HealthTech management provided to the Board and Canaccord Genuity. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. The Solicitation Statement fails to disclose the Company's Unlevered Free Cash Flows, a metric used by Canaccord Genuity for its *Discounted Cash Flow Analysis*, and fails to disclose the extrapolations of projected cash flows performed by Canaccord Genuity for the six months ending December 31, 2023, and calendar years 2024 through 2028, and all line items used to calculate the cash flows.

26. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA but fails to provide line items used to calculate the metric and a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP

measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a the Unlevered Free Cash Flows and the underlying line items, the line items used to calculate the projected Adjusted EBITDA, and reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Canaccord Genuity's Financial Analyses*

30. With respect to Canaccord Genuity's *Selected Public Companies Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Canaccord Genuity for the analysis; and (ii) the inputs and assumptions underlying the representative multiple ranges selected by Canaccord Genuity for the analysis.

31. With respect to Canaccord Genuity's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each transaction selected by Canaccord Genuity for the analysis; and (ii) the inputs and assumptions underlying the representative multiple ranges selected by Canaccord Genuity for the analysis.

32. With respect to Canaccord Genuity's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected unlevered free cash flows of Thorne HealthTech for the six months ending December 31, 2023, and calendar years 2024 through 2028 and all accompanying line items; (ii) the inputs and assumptions underlying the discount rates ranging from 11.0% to 15.0%; (iii) the terminal values of the Company in the year 2028; (iv) the inputs and assumptions underlying the perpetuity growth rate ranging from 2.0% to 3.5%; and (v) debt and non-controlling interest and cash and investments of the Company as of June 30, 2023.

33. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

36. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

38. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

39. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their

shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

40. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

42. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

43. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

44. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

45. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

46.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

47.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Thorne HealthTech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Thorne HealthTech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Thorne HealthTech, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Thorne HealthTech, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

52. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 19, 2023              **MELWANI & CHAN LLP**

                                       /s *Gloria Kui Melwani*
                                       Gloria Kui Melwani (GM5661)
                                       1180 Avenue of the Americas, 8th Floor
                                       New York, New York 10036

Tel: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*